UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| KEVIN RIVERA, | No. ED CV 15-1917-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 18, 2015, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on October 5, 2015, and June 22, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 17, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on May 13, 1974. [Administrative Record ("AR") at 38, 196.] He has past relevant work experience as a forklift driver, inventory control clerk, general office clerk, and warehouse worker. [AR at 38, 77-78.]

On May 4, 2012, plaintiff protectively filed an application for a period of disability and DIB, alleging that he has been unable to work since June 1, 2009. [AR at 26, 196.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 26, 131-32.] A hearing was held on September 24, 2013, at which time plaintiff appeared with a non-attorney representative, and testified on his own behalf. [AR at 45-88.] A vocational expert ("VE") also testified. [AR at 75-87.] On January 10, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from June 1, 2009, the alleged onset date, through September 30, 2013, the date last insured. [AR at 26-40.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 21.] When the Appeals Council denied plaintiff's request for review on July 20, 2015 [AR at 2-7], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation

and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

### B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 1, 2009, the alleged onset date.[1] [AR at 28.] At step two, the ALJ concluded that plaintiff has the severe impairments of obesity; shoulder, back, and neck impairments; and depression. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 29.]

---

[1] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through September 30, 2013. [AR at 28.]

4

The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 404.1567(b),[3] as follows:

> [H]e can no to rarely climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs; he can occasionally balance, stoop, kneel, crouch, and crawl; he can frequently reach overhead bilaterally; he is limited to no to rare exposure to unprotected heights; he can perform a full range of unskilled work that is all reasoning levels of unskilled work as indicated in the DOT [Dictionary of Occupational Titles]; he is precluded from jobs that require directing others or abstract thought or planning; and he should have superficial, and no direct interaction with the public.

[AR at 31.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as a forklift driver, inventory control clerk, general office clerk, and warehouse worker. [AR at 38, 76-79.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "cleaner/housekeeper" (DOT No. 323.687-014), "production inspector" (DOT No. 559.687-074), and "small parts assembler" (DOT No. 706.684-022). [AR at 39, 80-83.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of June 1, 2009, through September 30, 2013, the date last insured. [AR at 39.]

/

/

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she: (1) failed to either credit or validly reject the mental function assessments of the examining psychiatrist, Jaga Nath Glassman, M.D.; (2) granted little or no weight to the physical function assessments of plaintiff's treating physicians: physiatrist Ron Brizzie, M.D., and pain management specialist Yogesh Patel, M.D.; and (3) rejected plaintiff's subjective symptom testimony. [Joint Stipulation ("JS") at 5.] Plaintiff also contends that the Appeals Council erred in rejecting the assessments of orthopedic surgeon Ralph Steiger, M.D. As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.    MEDICAL OPINIONS**

   **1.    Legal Standard**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164

(citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

### 2. Dr. Steiger

On July 7, 2014, Dr. Steiger, an examining orthopedist, conducted an orthopedic evaluation of plaintiff. [AR at 688-701.] Dr. Steiger conducted his own physical examination [AR at 691-96], and reviewed plaintiff's medical records from the Brizzie Medical Group, Tri-City Medical Center, Thrive Physical Medicine, Hemet Family Chiropractic, and Dr. Patel. [AR at 696-97.] He also reviewed a November 11, 2009, lumbar spine MRI; a January 30, 2010, lumbar spine MRI; a March 5, 2010, EMG study of plaintiff's right lower extremity; an August 3, 2011, thoracic spine MRI; a February 13, 2013, cervical spine MRI; and a February 13, 2013, lumbar spine MRI. [AR at 697-98.] On July 24, 2014, Dr. Steiger completed an Impairment Questionnaire. [AR at 703-07.] Based on his clinical findings [AR at 698-99], and his review of the record and diagnostic studies, Dr. Steiger diagnosed musculoligamentous sprain, cervical spine, with right upper extremity radiculitis; disc protrusion at C4-C5 causing pressure over the thecal sac; de Quervain's tendinitis, right wrist; carpal tunnel syndrome, right wrist; musculoligamentous sprain, thoracic spine; disc protrusions at T5-T6, T6-T7, T7-T8, T9-T10, T10-T11, and T11-T12, all indenting the thecal sac; musculoligamentous sprain, lumbar spine, with lower extremity radiculitis; disc protrusions at L1-L2, L4-L5, and L5-S1, all impacting on the thecal sac; and S1 radiculopathy. [AR at 700.] He found limitations of no repetitive or prolonged neck movement; no repetitive gripping, grasping, pinching, or fine manipulation; no typing, keyboarding, data entry, or writing more than 25% of the work day; no heavy lifting, pushing, or pulling; no repeated bending or stooping; no repetitive twisting; no prolonged sitting; and no prolonged standing or walking. [AR at 700-01.] He concluded that plaintiff is "unable to perform full time competitive work" due to his limitation of

activities. [AR at 701.] In his Impairment Questionnaire, Dr. Steiger found that plaintiff could sit, stand, or walk for two hours in an eight-hour workday; should avoid continuous sitting, and must get up every thirty minutes for ten to fifteen minutes; could occasionally lift or carry up to ten pounds; occasionally grasp, turn and twist objects bilaterally; occasionally use hands/fingers for fine manipulations bilaterally; occasionally use arms for reaching (including overhead) bilaterally; would occasionally experience pain, fatigue or other symptoms severe enough to interfere with attention and concentration; would need to take unscheduled breaks every thirty minutes during an eight-hour day; and would be absent from work two to three times a month as a result of his impairments or treatment. [AR at 705-07.] He also specifically noted that plaintiff's symptoms and related limitations "apply as far back as 06/01/2009." [AR at 707.] Plaintiff submitted Dr. Steiger's reports to the Appeals Council for review. [AR at 2-7.] On July 20, 2015, the Appeals Council denied the request for review, finding no reason to review the ALJ's decision. [AR at 2.] The Appeals Council specifically noted that it had considered the additional evidence listed on its Order, including Dr. Steiger's July 7, 2014, evaluation, and July 24, 2014, Impairment Questionnaire. [AR at 3, 7.] The Appeals Council then stated the following:

> We considered whether the [ALJ's] action, findings, or conclusion is contrary to the weight of evidence currently of record. We found that this information does not provide a basis for changing the [ALJ's] decision.
>
> We also looked at Prescription Records Longs Drug Stores California dated June 3, 2014. The [ALJ] decided your case through January 10, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 10, 2014.

[AR at 3.] Plaintiff notes that the Appeals Council, "apparently granted no weight to Dr. Steiger's assessment, simply asserting that they had considered those documents and then criticizing records from another provider dated June 3, 2014 as being 'about a later time.'" [JS at 29.] Plaintiff then makes the assumption that "the Council applied the same reasoning to its rejection of the reports from Dr. Steiger." [Id.] Defendant does not dispute this assumption, noting that the ALJ's decision was issued on January 10, 2014, and plaintiff's date last insured was September 30, 2013, and, therefore, because Dr. Steiger's records postdate the decision by almost six months and the date last insured by more than nine months, they "could not have been considered

by the ALJ and ha[ve] little relevance to the period at issue." [JS at 34-35 (citations omitted).] Defendant also questions plaintiff's "timing . . . seeking . . . this doctor's opinion," and states that plaintiff "may have sought a second bite of the apple to try to invalidate the ALJ's decision with a consultative doctor's opinion that postdates the ALJ's decision where the ALJ would be unable to . . . review[] the record." [JS at 35.] Defendant argues that even if the evidence was related to the evidence considered by the ALJ, remand would not be appropriate as Dr. Steiger saw plaintiff only once, the opinion is "simply a consultative opinion" and the ALJ "had already reviewed and given appropriate weight to the treating opinions," and Dr. Steiger's opinion "adds nothing new to the analysis of Plaintiff's capacity during the relevant period and therefore does not change the support of the ALJ decision." [Id. (citations omitted).] Echoing the Appeals Council, defendant states that the new evidence could be included with a new application "but should not be found to be related 'to the period on or before the date of the [ALJ's] decision.'" [JS at 35-36 (citing 20 C.F.R. § 404.976(b)(1)).]

Under agency regulations, the Appeals Council must consider additional evidence that is new, material, and relates to the period on or before the date of the ALJ's decision. See 20 C.F.R. § 404.970(b)[4]; Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232-33 (9th Cir. 2011) (remanding to ALJ where it was apparent from Appeals Council's denial of review that it had not considered plaintiff's additional evidence); see also Lamp v. Astrue, 531 F.3d 629, 632-33 (8th Cir. 2008) (remanding where it was not clear from the record whether the Appeals Council had considered plaintiff's additional evidence). New evidence is material if it bears "directly and substantially on the matter in dispute." Luna v. Astrue, 623 F.3d 1032, 1034 (9th Cir. 2010)

---

[4] Title 20 C.F.R. § 404.970(b) provides that "[i]f new and material evidence is submitted, the Appeals Council <u>shall consider</u> the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ's] hearing decision. It will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." (Emphasis added).

9

1  (quoting Booz v. Sec'y of Health Human Svcs., 734 F.2d 1378, 1380 (9th Cir. 1984) (citation
2  omitted)).

3   Although plaintiff mentions in passing that the Longs Drug Store records referred to by the
4  Appeals Council were "from another provider" [JS at 29], neither plaintiff nor defendant directs the
5  Court to any such records and it appears that the evidence may be related to some other plaintiff
6  entirely. [See AR at 8 (providing the name and mailing address of another individual as part of
7  the Appeals Council order).] Moreover, the Court was unable to find any records from Longs Drug
8  Store in the Administrative Record, and the exhibits referred to in the Appeals Council's Exhibits
9  List do not include such evidence. [See AR at 6, 7 (making Dr. Steiger's reports at AR 688-701
10 and 703-07 part of the record).] Notwithstanding this fact, the parties appear to agree that the
11 Appeals Council made the determination that Dr. Steiger's reports pertained to a time later than
12 the date last insured. However, as detailed above, Dr. Steiger considered the entire record in
13 arriving at his conclusions; therefore, his reports bear "directly and substantially on the matter in
14 dispute," and thus may well inform a decision concerning plaintiff's condition prior to the date last
15 insured. Indeed, Dr. Steiger specifically noted that the imposed limitations relate back to the
16 alleged onset date of June 1, 2009. [AR at 707.]

17  Where, as here, the Appeals Council was required to consider additional evidence, but
18 apparently failed to do so -- and apparently did not give the newly submitted evidence sufficient
19 consideration to even determine if it was concerning the appropriate claimant -- remand to the ALJ
20 is appropriate so that the ALJ can reconsider the decision in light of the additional relevant
21 evidence. Taylor, 659 F.3d at 1233. Additionally, although defendant also argues that Dr.
22 Steiger's records "add nothing new to the analysis" of plaintiff's limitations during the relevant
23 period, the Court does not agree. Dr. Steiger synthesized all of plaintiff's medical records,
24 including plaintiff's diagnostic imaging, and his own clinical findings, to determine plaintiff's
25 limitations, which he concluded applied as far back as June 1, 2009. [AR at 707.] Indeed, Dr.
26 Steiger's opinions tend to corroborate the treating opinions of Dr. Brizzie and Dr. Patel, whose
27 opinions the ALJ gave "limited weight," in part "because the medical records do not document
28

1 significant positive objective clinical or diagnostic findings to support the assessed functional
2 limitations."[5]  [AR at 35, 36.]

3 Based on the foregoing, the Court finds it appropriate for the ALJ on remand to reconsider the medical records, including Dr. Steiger's reports, to the extent those reports shed light on plaintiff's condition, credibility, and limitations prior to his date last insured.

### 3. Dr. Glassman

Dr. Glassman, the state agency psychiatrist, examined plaintiff on October 18, 2012. [AR at 466-71.] He also reviewed a March 21, 2012, "typed note from Vista Community Clinic," and a June 21, 2012, "Psychiatric Evaluation for Social Security Disability," from Romualdo Rodriguez, M.D., a Board-eligible psychiatrist. [AR at 466, 469.] Dr. Glassman diagnosed plaintiff with "Major Depression, Possible Psychotic Features. Pain Disorder with Medical and Psychological Factors." [AR at 469.] He also noted plaintiff's obesity and recent weight loss, reported musculoskeletal/orthopedic problems in his lower back, and stressors including the loss of his wife, being a single father to three daughters (aged 13, 18, and 20 at that time), and lack of income. [Id.] Dr. Glassman concluded as follows:

> [Plaintiff] has some mild to moderate impairment in his capacity to function in a workplace setting, due to his significant depression. He is capable of behaving in a socially-appropriate manner and of getting along adequately with others. He is capable of understanding and following simple instructions. He has moderate impairment in his capacity to understand and follow complex instructions. He has moderate impairment in his capacity to adapt to changes and stresses in a workplace setting, and to maintain concentration, persistence, and pace. [¶] He is not currently in any active mental health treatment, which could help decrease his symptoms and improve his functioning.

[AR at 470.]

In determining plaintiff's RFC the ALJ stated that he gave "significant weight" to Dr. Glassman's opinion as that conclusion is "consistent with the record as a whole." [AR at 37-38.] Accordingly, the ALJ limited plaintiff to unskilled work at all reasoning levels, and precluded plaintiff

---

[5] In light of the Court's decision, the Court will not consider herein plaintiff's arguments regarding the ALJ's failure to properly consider the opinions of Dr. Brizzie and Dr. Patel, and the ALJ on remand shall reconsider all of the medical opinions.

11

1 from jobs requiring directing others, or abstract thought or planning. [AR at 31.] He also found
2 that plaintiff should have "superficial, and no direct interaction with the public." [Id.]

3       Plaintiff contends that because the ALJ gave Dr. Glassman's assessments "significant
4 weight," the ALJ erred when she failed to include in her RFC assessment Dr. Glassman's finding
5 that plaintiff had moderate limitations in concentration, persistence, and pace. [JS at 7-8.]
6 Specifically, plaintiff contends the ALJ simply ignored this portion of Dr. Glassman's opinion and
7 should have either credited his opinion or articulated specific and legitimate reasons for not doing
8 so. [JS at 8.] He notes that based on the testimony of the VE, if plaintiff had moderate limitations
9 in concentration, persistence, and pace, this would preclude all work. [Id.] Specifically, at the
10 hearing, the following colloquies occurred:

> [ALJ:] And so [for hypothetical number four] if they were off task 20 percent of the time because of maybe their medication side effects [or] maybe that -- you know, needing those breaks, unscheduled breaks, what have you -- but if they were off task 20 percent of the time due to their impairments and symptoms, would they be able to perform any of the jobs previously indicated?
>
> [VE:] No.
>
> [ALJ:] Would they be able to perform any jobs?
>
> [VE:] No.
>
> . . . .
>
> [ATTY:] And -- let's see -- I believe hypothetical number four already covered . . . [Dr. Glassman's finding on] Page 5 [of his report] regarding concentration, persistence, and pace.
>
> [ALJ:] With the 20 percent?
>
> [ATTY:] Correct.
>
> [ALJ:] Okay.

23 [AR at 83, 87 (see also AR at 470).] Plaintiff argues that the ALJ's question -- seeking to clarify
24 that it was "the 20 percent" off-task limitation in hypothetical number four that counsel believed
25 corresponded with Dr. Glassman's finding regarding concentration, persistence, and pace --
26 reflects the ALJ's agreement with plaintiff that "moderate limitations in concentration, persistence,

and pace as reflected in Dr. Glassman's report translated into the need to be off-task for 20 percent of the time." [JS at 8.]

The Court finds that whether the ALJ's question reflected her agreement that the 20 percent off-task limitation in hypothetical number four corresponded with Dr. Glassman's moderate limitation in concentration, persistence, and pace is ambiguous at best. Because the matter is being remanded for reconsideration of the medical record, including Dr. Steiger's reports, the ALJ on remand shall also specifically address the weight given to Dr. Glassman's moderate limitations in concentration, persistence, and pace,[6] and the effect, if any, of those limitations on plaintiff's ability to perform work.

**B.  CREDIBILITY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 36.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of her symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities;

---

[6]  Of note, the State Agency mental health consultants, Dr. Phillips and Dr. Amado, both also opined that plaintiff has moderate limitations maintaining concentration, persistence, and pace, thereby corroborating Dr. Glassman's opinion. [AR at 96, 109.] The ALJ also gave "significant weight" to the opinions of Drs. Phillips and Amado regarding plaintiff's mental residual functional capacity, including this finding. [AR at 37-38.]

(4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim, 763 F.3d at 1163; 20 C.F.R. § 404.1529(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 31-38], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, the ALJ found plaintiff's allegations only "partially credible." [AR at 32.] In making this determination, she provided the following reasons: (1) plaintiff's activities of daily living are not limited to the extent expected, in light of his complaints of disabling symptoms and limitations; (2) plaintiff's daily activities, including cooking, driving, shopping, reading, visiting family, doing household chores, going to the gym, stretching, and going to his daughter's dance shows, require some of the same physical and mental capabilities and social interactions "necessary for obtaining and maintaining employment"; (3) "[m]uscle atrophy is a common side effect of prolonged and/or chronic pain due to lack of use of a muscle in order to avoid pain" and there is no evidence of

muscle atrophy in the record; (4) plaintiff testified inconsistently about his weight gain and loss, and about when his spouse passed away; (5) the lack of aggressive treatment or surgical intervention suggests plaintiff's symptoms and limitations are not as severe as he alleges; (6) there have been significant periods since the alleged onset date during which plaintiff did not take any medications, and he takes his prescribed medications on an "as needed" basis; (7) plaintiff stopped working due to business-related reasons; (8) plaintiff has had inconsistent treatment for his mental condition; and (9) the fact that plaintiff moved himself and his family to a new home in a new town suggests that he has greater function than he reports. [AR at 32-33.]

Plaintiff argues that none of the reasons provided by the ALJ is clear and convincing, and defendant counters those arguments. Because the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, on remand the ALJ must also reconsider plaintiff's credibility and, based on her reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony if warranted. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter, 806 F.3d at 493-94 (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding

issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ on remand shall reassess the medical opinions, including the opinions of Dr. Steiger, as well as Dr. Glassman's finding of moderate difficulty in concentration, assistance, and pace, and any resulting RFC limitations. In assessing the medical opinion evidence, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including, if warranted, a legally sufficient explanation for discounting the doctors' opinions regarding plaintiff's severe impairments and limitations. Next, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. See Treichler, 775 F.3d at 1103 (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter, 806 F.3d at 493-94 (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination). Finally, the ALJ shall reassess plaintiff's RFC and determine at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.[7]

/

/

/

---

[7] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June  22 , 2016

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE